UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COOK CHILDREN'S MEDICAL CENTER, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | CIVIL ACTION NO. 3:03-CV-1645-B | |
| § | | |
| SAV-ON, LTD, et al. § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM ORDER

The following motions are before the Court: (1) the Motion of Plaintiff Cook Children's Medical Center ("CMCC") for Summary Judgment on its claims against Sav-On, LTD, and Sav-On LTD Comprehensive Health Care Plan (collectively "Sav-On" or the "Defendant") for Summary Judgment on all of its claims, and the Cross-Motion of Sav-On for Summary Judgment in its favor on all of CMCC's claims, filed on January 20, 2004 and April 20, 2004, respectively. Having reviewed the pleadings and evidence on file, the Court GRANTS Sav-On's motion for summary judgment in its entirety and DENIES CMCC's motion for summary judgment in its entirety for the reasons that follow.

### I. BACKGROUND FACTS[1]

CCMC filed this lawsuit against Sav-On pursuant to the Employee Retirement Income

---

[1] The facts are derived from the parties' pleadings and the evidence contained in the summary judgment record. Unless characterized as a contention by one of the parties, these facts are undisputed. The Court will review the factual determinations of the plan administrator for abuse of discretion, considering only the contents of the administrative record. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999) (noting that the "procedural rules encourage parties to resolve their dispute at the administrator's level.").

Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 on July 22, 2003. *See generally* (Complaint). Specifically, CCMC seeks recovery of plan benefits for medical services provided to Mary Jo Wright ("Mary Jo") by the hospital from June 2, 2002 through August 3, 2002 as well as its attorneys' fees and costs. (*Id.* at 3-4). CMCC asserts that Mary Jo's rights to those benefits were assigned to the hospital upon the commencement of her medical treatment. (*Id.*). It is undisputed that Mary Jo was at the time a covered dependant of her mother, Tracy Wright ("Tracy"), who was a beneficiary of the Plan. According to CMCC, the Plan allegedly "agreed to provide Mary Jo, and in turn Plaintiff, her assignee, with medical expense benefits during the period from June 2, 2002, through August 3, 2002," but subsequently refused to pay such benefits. (*Id.* at 3-4). CMCC claims that the Plan's refusal to pay was an arbitrary and capricious breach of its obligations under ERISA and Plan documents. (*Id.*). CCMS seeks damages in "the amount of the unpaid benefits to which Plaintiff as Mary Jo's assignee was entitled under the terms of the Plan documents during the period from June 2, 2002 through August 3, 2002," totaling $224,418.25, for the Plan's alleged abuse of discretion. (*Id.* at 2-4).

Sav-On, on the other hand, claims that it is entitled to summary judgment in its favor on all of CCMC's claims against it. *See generally*, (D MSJ). Before setting forth the factual timeline, the Court notes that throughout both its motion briefing and its opposition briefing, CCMC makes numerous conclusory assertions of fact with no evidentiary citations, in violation of Local Rule 7.2(e), which provides:

> "If a party's motion or response is accompanied by an appendix, the party's brief must include citations to each page of the appendix that supports each assertion that the party makes concerning any documentary or non-documentary evidence on which the party relies to support or oppose the motion."

*Id.* Moreover, as the Fifth Circuit noted in *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.1992), Rule 56, (Summary Judgment) does not impose a duty upon the Court to "sift through the record" for evidence supporting CCMC's position.

### A.  Medical Services Rendered to Mary Jo Wright.

The parties agree that Mary Jo was a covered dependant and that her mother was a beneficiary under Sav-On's Plan. Mary Jo, who had been born twenty-three (23) weeks prematurely, was treated by CMCC from June 2, 2002 to August 3, 2002. (P MSJ at 1). It is undisputed that the Plan sponsored by Sav-On is an employee welfare benefit plan under ERISA providing medical benefits to company employees as well as their covered dependants. (D App at 1). While Sav-On is the designated Plan Administrator, claims are administered by Administrative Concepts, Inc. ("ACI"). (*Id.*).

Sav-On alleges that it amended "the [P]lan document effective July 1, 2002, to include a calendar year maximum benefit per person of $100,000," and that a restated Plan document was issued." (D MSJ at 2; D App at 2; 37). At the time the plan was amended, Mary Jo was hospitalized and undergoing treatment, but Sav-On admits that it "denied CCMC's claims for benefits for treatment it rendered to Mary Jo Wright after June 30, 2002, because as of that date benefits paid to CCMC by the Plan had already exceeded the $100,000 calendar year maximum." (*Id.*). CCMC agrees that the Plan had paid more than $100,000 of Plan benefits to the hospital for services rendered to Mary Jo through June 20, 2002, but argues that the Plan should have paid continued medical benefits. (P MSJ at 2).

CCMC filed this ERISA lawsuit on July 22, 2003 in the Northern District of Texas, seeking damages in an amount equal to the unpaid charges for medical services rendered to Mary Jo from

-3-

Jul1 1, 2002 to August 3, 2002, as well as its attorneys' fees and costs. (Complaint). Before the Court is CCMC's motion for summary judgment, filed June 20, 2004, seeking summary judgment on the entirety of its claims against Sav-On. Also before the Court is Sav-On's motion for summary judgment, filed April 20, 2004, seeking judgment in its favor on all of CCMC's claims against it.

## II. ANALYSIS

### A. Legal Standard and Evidentiary Burdens.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

Once a movant demonstrates that there are no genuine issues of material fact as to the issues on which it seeks summary judgment, the burden shifts to the nonmovant to point to evidence in the record sufficient to support a resolution of the issue of fact in its favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 255 (citations omitted). The role of the Court deciding a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

It is undisputed that ERISA governs the Plan. In analyzing a claim for medical expense

benefits allegedly due under an ERISA plan, the district court reviews the plan administrator's determination for abuse of discretion when the plan expressly gives the administrator discretionary authority. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004). The Plan explicitly gives the Plan Administrator discretionary authority, and the parties do not dispute the appropriate standard of review. (D App at 27; P MSJ at 3-4). In reviewing CCMC's motion for summary judgment on the plan administrator's denial of medical expense benefits, the Court may only find for the Plaintiff if Sav-On's decision to deny payment of Plan benefits to CCMC for the relevant time period constituted an abuse of discretion. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

### B.   CCMC is a Valid Assignee of Mary Jo's Benefits Under the Plan.

The initial question the Court must address is whether CCMC is a valid assignee of Mary Jo and thus entitled to sue for medical expense benefits denied her by Sav-On. In *Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289, the Fifth Circuit joined the Ninth Circuit in holding that beneficiaries of ERISA health care plans may assign their rights to receive benefits to their health care providers. CCMA has introduced evidence that upon consenting to treatment for her daughter by CCMA, Tracy Right assigned the rights of herself and her daughter to receive medical expense benefits under the Sav-On Plan to CCMA. *See* CCMC Record of Admission (P App at Exh. 1; P Reply at 3). Sav-On has not introduced controverting evidence sufficient to raise a genuine issue of material fact. Therefore, the Court thus finds that CCMC has standing to sue Sav-On for recovery of medical expense benefits allegedly owed Mary Jo under the Plan.

### C.   The Plan's Denial of Benefits Was Not an Abuse of Discretion.

CCMC has brought this suit pursuant to ERISA section 1132(a)(1)(B), which allows

qualified employee benefit plan participants or beneficiaries to bring civil suit to recover benefits due under the plan. *Tait v. Barbknecht & Tait Profit Sharing Plan, et al.*, 997 F. Supp. 763, 768-69 (N.D. Tex. 1998) (Fish, J.). As set forth in the Fifth Circuit's opinion in *Wildbur v. Arco Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992), courts reviewing a plan administrator's denial of a qualified participant's claim for benefits determine two issues: "whether the administrator's interpretation is legally correct," and *if not*, "whether the decision constituted an abuse of discretion." *Id.*; *see also Tait*, 997 F. Supp. at 769. In analyzing whether Sav-On's plan interpretation was legally correct, the Court considers three factors. *Tait*, 997 F. Supp. at 769 (citing *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1131 (5th Cir. 1996)) (citations omitted); *Wildbur*, 974 F.2d at 637-38. First, the Court determines whether the plan has been given a uniform construction. *Id.* Second, the Court determines "whether the interpretation is consistent with a fair reading of the plan." *Id.* Finally, the Court determines "whether a different interpretation will result in unanticipated costs." *Id.*

Because neither party has provided evidence regarding whether Sav-On uniformly construed the Plan or whether CCMC's interpretation of the plan would result in unanticipated costs (and the Court finds no evidence that it would), the Court need not address these two factors. *Accord*, *Tait*, 997 F. Supp. at 769, 771. Thus, the focus is whether Sav-On's interpretation of the plan is a fair reading of the plan provisions. *Tait*, 997 F. Supp. at 771. While both parties agree that the July 1, 2002 amendment to the Plan caps benefit payments annually at the sum of $100,000, CCMC claims that the "amendment" to the Plan which limits the annual allowable medical expense benefits to that amount did not become effective until July 1, 2003. (P MSJ at 3-4). To support its assertion, CCMC cites to the Plan effective July 1, 2001, which states as follows:

> Any amendment limiting benefits under the Plan shall be universally applicable to all

> individuals in the same eligible class, based on bona fide employment classifications consistent with the Employer's (sic) usual business practices, and shall not be effective earlier than the first day of the first Plan year after such amendment is adopted.

(*Id.*; P App.; Exhibit 1; The July 1, 2001 Plan Document at SAV 558).

The July 1, 2001 defines the term "Plan Year" as "the 12 month period beginning on either the effective date of the Plan or the day following the end of the first Plan year which is a short Plan Year." (*Id.* at SAV 543). CCMC argues that these two provisions render the amendment ineffective until July 1, 2003, the beginning of the new plan year. (P MSJ at 3-4). Sav-On claims, however, that because this amendment limitation is contained in the July 1, 2001 plan and not in the July 1, 2002 plan, that it does not apply to the $100,000/year cap. (Defendant's Brief at 4-7; D App, Exh. A-C). The Plan effective on July 1, 2002 had no such limitation. (*Id.*). The Court therefore agrees with Sav-On that the amendment became effective July 1, 2002.

CMCC also makes the argument that Sav-On's denial was an abuse of discretion because the rights to receive benefits covering Mary Jo's entire medical treatment essentially vested when her treatment began. *See* (P Reply Brief at 5); (citing *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 639 (4th Cir. 1995)). CMCC relies upon the reasoning of the Fourth Circuit in *Wheeler*, which held that it was an abuse of discretion to "terminate coverage during the middle of a procedure." *Id.* at 640. The *Wheeler* Court reasoned that to allow such termination would make it too difficult for employees to make decisions as to whether to undergo a particular procedure. *Id.* Sav-On argues that the *Wheeler* decision is distinguishable from the instant case, and the Court agrees. (D MSJ at 7). Unlike the employee in *Wheeler*, who was undergoing a specific type of chemotherapy treatment to treat her breast cancer, the record indicates that Mary Jo's treatment was not a "particular

procedure whose scope is relatively short and well defined." *Wheeler*, 62 F.3d at 640. After being born twenty-three (23) weeks prematurely, Mary Jo was hospitalized at CMCC until she died on August 3, 2002. (D App. at 95-98). She was treated for a number of problems, including chronic lung disease, hypotension, seizures, and renal failure. (*Id.*).

Similarly, in *McGann v. H&H Music Co.*, 946 F.2d 401, 405 (5th Cir. 1991), the Fifth Circuit affirmed a district court's decision to grant summary judgment in favor of an employer sued by its employee after changing portions of its group medical plan by reducing the maximum medical expense benefits allowable any employee with acquired immune deficiency syndrome (AIDS) from $1 million to $5,000. *Id.* The employer enacted the amendment to its plan within seven months of the employee's submission of a claim related to his AIDS affliction, and the Court of Appeals found that the amendment did not constitute unlawful discrimination under ERISA. *Id.* The Court noted that "there [was] nothing in the record to suggest that defendant's motivation was other than...to avoid the expense of paying for AIDS treatment" for all present and future plan beneficiaries with the disease. *Id.* at 404. In the instant case, Sav-On changed its maximum allowable annual benefit as to *all employees* effective July 1, 2002. Although the claims in *McGann* were couched as unlawful discrimination, the Court finds that the reasoning of the Court of Appeals in *McGann* applies squarely to the instant case. For the reasons discussed, the Court finds that Sav-On's decision to deny payment of further medical expense benefits was a fair reading of the Plan and thus was not legally incorrect.

Finally, CMCC has argued that the Plan violated ERISA by failing to give Mary Jo the advance notice required by the Plan. (P MSJ Response at 5; D App at 6). The evidence proffered, however, indicates that Tracy Wright did receive notice of the amendment, and CMCC has

introduced no controverting evidence sufficient to raise a genuine issue of material fact.  (D App., Exh. 6 at 127-28).  Moreover, the Fifth Circuit has made clear that only in cases of "active concealment or some significant reliance upon, or prejudice resulting from the lack of notice," is a Plan required to prove actual notice of an amendment, *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 926 (5th Cir. 1995), and CMCC has failed to demonstrated that this is the case.

In sum, the Court finds that Sav-On's decision to deny payment of medical expense benefits beyond the $100,000 annual maximum was a fair reading of the July 1, 2002 Plan and did not constitute an abuse of discretion.[2]  *Tait*, 997 F. Supp. at 769.

### C.    Attorneys' Fees.

CCMC also seeks an award of its attorneys' fees.  Although ERISA allows the Court to award reasonable attorneys' fees and costs to either party, that decision is purely discretionary.  *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 832-33 (5th Cir. 1996).  Courts should consider (1) the degree of bad faith exercised by Sav-On, (2) Sav-On's ability to pay the award, (3) whether an award would deter other persons from acting similarly under similar circumstances, (4) whether CCMC seeks to benefit all ERISA participants and beneficiaries or seeks to resolve a significant ERISA legal question, and (5) the relative merits of each party's position.  *Todd v. AIG Life Ins. Co.*, 47 F.2d 1448, 1458 (5th Cir. 1995).  In light of these factors, the Court does not find that the circumstances of this case warrant an award of attorneys' fees, and therefore DENIES CMCC's

---

[2] The Court notes that CMCC included an argument that the amendment was not properly witnessed, but has introduced no evidence to controvert the summary judgment evidence of the Defendant in its Appendix demonstrating that the amendment was properly witnessed, and thus no genuine issue of material fact on this issue remains.

motion.

## III.  CONCLUSION

For the reasons discussed, the Court finds that there are no genuine issues of material fact that the Defendant did not abuse its discretion in denying payment of medical expense benefits to CCMC for services and products rendered for the treatment of Mary Jo Wright for the time period from July 2, 2002 through August 3, 2002, and thus **GRANTS** Sav-On's motion for summary judgment in its entirety and **DENIES** CMCC's motion for summary judgment in its entirety.

**SO ORDERED.**

**SIGNED July 29th, 2005**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE